PIONEER OIL HEAT, INC. *v.* DAISY BROWN ET AL.

[No. 46, October Term, 1940.]

*Decided December 18th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Leon H. A. Pierson* and *Morton J. Hollander,* for the appellant.

*Benjamin L. Wolfson,* with whom was *David Hettleman* on the brief, for the appellees.

MITCHELL, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court No. 2 of Baltimore City, overruling a demurrer to the bill of complaint of the appellees:

In substance the bill sets forth that the appellees, Daisy Brown and Oliver Brown, are seized and possessed, as joint tenants, of certain real estate located in the City of Baltimore, and that during the month of July, 1935, Daisy Brown entered into a contract with the appellant for the installation on said premises of an oil burner, oil tank and accessories, including a hot-air furance; it being alleged that forms of proposal and conditional contract of sale for the installation were submitted only to Daisy Brown, Oliver Brown not being a party to the transaction. It is then charged that the appellant made the installation, but did so in an unworkmanlike and imperfect manner and refused to perfect the plant, although called upon by Daisy Brown so to do; that in consequence, the proposed heating system did not properly function; whereupon the appellant, having failed to comply with its guarantees, warranties and representations, after reasonable notice of the defect, was notified by Daisy Brown to remove the heating plant from the premises, claiming that it did not measure up to the uses and purposes for which it was purchased, and advising that the installment payments under the contract would cease. After detailing damages to their property incident to the faulty installation of the plant, the bill recites that some time between July, 1935, and April 8th, 1936, the appellant assigned certain paper writings purporting to be confessed judgment notes of the appellees executed in

connection with the purchase of the heating plant, to the National Marine Bank of Baltimore; upon which said notes the appellees made monthly installment payments from time to time to said bank, meanwhile complaining of the defects in the plant, and finally ceasing to make payments upon reaching the conclusion that the appellants did not intend to make good the imperfections complained of. It is further alleged that during the discussions concerning the failure to make further payments to the bank, the bank exhibited to Daisy Brown said confessed judgment notes; that up to that time she had not understood the notes to be of that character; that they bore the signature of "Oliver Brown," which had been forged by an agent of the appellant, and that notwithstanding the fact that said bank was fully cognizant of the forgery, it proceeded through its attorneys to enter judgment thereon for the sum of $508.50, including a usurious "late charge" of 5 per cent., plus attorney's fees and court costs, against both appellees, in the Superior Court of Baltimore City.

On behalf of Oliver Brown the bill denies that he ever wrote or authorized others to write his signature to any of the papers connected with the above transaction, nor did he ratify or authorize the same.

Among other allegations the bill sets out that the Federal Housing Administration guaranteed to the bank the payment of said notes; that after the date of the entry of said judgment, to wit, April 8th, 1936, the said bank and the Federal Housing Authority assigned and transferred the judgment to the Pioneer Oil Heat, Inc., whereby that corporation was placed in the same position as if said judgment notes had never been assigned. And it is then alleged that the appellees "made an attempt in the Superior Court of Baltimore City, by a petition alleging the fraud hereinbefore set forth, to strike out and set aside the confessed judgment against your orators and that on or about March 28th, 1940, the motion filed by and on behalf of your orators in the Superior Court of Baltimore City was overruled without in any way giv-

ing opportunity for the facts to be known or presented to the court; nor was even an inquiry made by said court as to the true facts and equities in the situation, thus depriving your orators of their right to be free and unencumbered from the odium and lien of a judgment against them and their property."

Alleging further that the complainants were without financial means wherewith to appeal from the action of the court in overruling the motion to strike out the judgment; that the instant suit was brought for the purpose of avoiding circuity and multiplicity of actions between the litigant parties; that the appellees had no complete and adequate remedy at law, and that a writ of *fieri facias* had been ordered to be issued upon said judgment; the bill prays that the judgment be stricken out and set aside and that meanwhile the appellants, the Sheriff of Baltimore City and the Clerk of the Superior Court be enjoined and restrained from further procedure under the writ of *fieri facias*.

The record does not set out the ground upon which the Superior Court refused to strike out the judgment, or any docket entries in the judgment case; and for the purposes of the demurrer now under consideration we must assume that that court made its ruling upon the face of the record then before it, without hearing evidence. However, we cannot assume that the court acted in an irregular manner, when from the record its action could have been based upon proper and reasonable legal grounds without the aid of extraneous evidence, as for example laches or estoppel. The petition to strike out the judgment does not appear in the record before us, and the admission of facts evidenced by the demurrer in the instant case is limited only to facts which are well pleaded. But admitting that the appellees "made an attempt," whatever meaning may be ascribed to that dubious phrase, by a petition alleging the fraud hereinbefore set forth, to cause the judgment to be stricken out, and that on March 28th, 1940, the motion was overruled as alleged, such facts would not, in our opinion, bar the trial court from refusing to hear testimony on the mo-

tion to strike, if the record before it showed that, with full knowledge of the alleged fraud, the judgment debtors made payments upon the transaction; or that without laboring under any disability and with such knowledge, they failed to take any action to have the judgment stricken out between April 8th, 1936, the date of the judgment, and March 28th, 1940, the probable date upon which the motion to strike it out was made.

Courts usually act liberally in those cases in which the application to strike out a judgment is made during the term in which it was entered, or where there is a judgment by confession taken without notice to the defendants, and upon reasonable proof of merit and other equitable circumstances, strike out the judgment and let the defendant in to be heard. *Denton National Bank v. Lynch,* 155 Md. 338, 339; 142 Atl. 103; *Keiner v. Commerce Trust Co.,* 154 Md. 370, 371; *Finance Co. v. Myerly,* 161, Md. 23, 26, 28.

But aside from the general principles above outlined, the unbending rule is that one who has an adequate legal remedy may not resort to equity for relief against a judgment. In other words, if the complaining party has resorted to adequate legal remedy and been denied relief, that adjudication will bar relief in equity if remedies then available to the petitioner are waived or suffered to lapse. 3 *Freeman on Judgments,* paragraphs 1194, 1195. And when a remedy by appeal is afforded, errors or irregularities which can be corrected by pursuing that remedy cannot be made the basis for injunctive or other equitable relief. Hence one who voluntarily omits to appeal from a judgment is not entitled to relief in equity which he might have obtained by appeal. *Freeman on Judgments, supra.,* par. 1196; *Hesser v. First National Bank,* 159 Md. 251, 260, 261.

It may be added that a judgment by confession possesses all the incidents, and is supported by the same presumptions, and entitled to the same faith and credit as any other judgment. *Freeman on Judgments, supra,* par. 1337; *Keiner v. Commerce Trust Co.,* 154 Md. 366, 141 A. 121. In *Commercial Savings Bank v. Quall,* 156 Md.

16, 142 A. 488, the defendant appealed from the overruling of a demurrer to a bill in equity to restrain execution on a judgment by confession at law, after a motion in the court of law to set aside the judgment had been granted upon condition that the judgment debtors file a bond in the penal sum of $1500. No appeal was taken from the action of the law court in the premises, but the judgment debtors did not comply with the above condition, and sought an injunction to prevent the issuance of execution on the judgment. Upon appeal from the injunction proceedings, this court, in reversing the order of the lower court, observed that the appellees had been granted the relief sought, with a right of appeal from the requirement of a bond, and that if they deemed that condition unjust, they had no right to start a new proceeding for relief in equity, for the reason that they had elected their remedy, obtained an adjudication, and could have no second proceedings for it. In this connection the court, speaking through Chief Judge Bond, said: "In thus striking out or opening a judgment, a court of law exercises a quasi equitable jurisdiction, and it has power to surround the relief with precautionary conditions. And there is a right of appeal to this court from the requirement of the bond. *Phillips v. Taylor,* 148 Md. 157, 163; *Taylor v. Gorman,* 146 Md. 207. The bill now filed seems to be, then, nothing more than a second effort to get relief that has already been granted in the court of law according to the wisdom and direction of the judge of that court, but to get it on better terms. In effect, one court is asked to relieve of that which the judge of the other court, in his discretion, has found justice to require as a condition to the delay of execution upon the debtors' assets, which would be entailed by an opening of the case for trial of the defenses offered." "Even where the judgment is absolutely void there may be and often is an adequate remedy by appeal or motion. In such cases relief (in equity) will be refused." 5 *Pomeroy's Eq. Juris.,* sec. 2087, p. 4701.

*Order reversed, and bill dismissed, with costs to the appellant.*